UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DEBBIE R. PENN,                          )
                                         )
            Plaintiff,                   )
                                         )
    v.                                   )        No. 4:22-cv-01067-MTS
                                         )
ANNABELLA ARTHUR,                        )
                                         )
            Defendant.                   )

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Debbie R. Penn for leave to commence this civil action without prepayment of the required filing fee. Doc. [4]. Having reviewed the motion, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $20.51. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's complaint without prejudice.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of her motion for leave to proceed in forma pauperis, plaintiff has attached a copy of her inmate account statement. Doc. [4] at 3. The account statement shows an average monthly deposit of $102.57. The Court will therefore assess an initial partial filing fee of $20.51, which is 20 percent of plaintiff's average monthly deposit.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should

construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff is a self-represented litigant who is currently a pretrial detainee at the St. Louis County Justice Center in Clayton, Missouri. Doc. [1] at 2. She brings this civil action pursuant to 42 U.S.C. § 1983, naming Lieutenant Annabella Arthur as defendant. Lieutenant Arthur is sued in both her official and individual capacities. The complaint contains allegations of a pattern of verbal harassment that Lieutenant Arthur has directed towards plaintiff.

In the "Statement of Claim," plaintiff asserts that Lieutenant Arthur has "harassed" and "verbally abused [her] on numerous" occasions from April 27, 2021 until September 11, 2022. Doc. [1] at 3. She states that Lieutenant Arthur constantly torments and belittles her, that Arthur would say "unthinkable" things to her, and that Arthur "verbally [assaults] and abuses [her] over and over again." Doc. [1] at 3-4. Plaintiff explains that she has told Lieutenant Arthur many times that she wants to "succeed," but that Arthur "has shattered [her] hope and faith," and "is a terrorist and punisher." Doc. [1] at 4. She also states that Lieutenant Arthur overpowers her and other inmates with "fear and pure hatred."

3

Plaintiff claims that Lieutenant Arthur's verbal harassment has given her "a strong case of PTSD." Doc. [1] at 3. She insists that "the mental toll of the abuse [Lieutenant Arthur] has inflicted on" her has caused "very, very bad panic attacks when the intercom comes on and [her presence] is requested by anyone." Doc. [1] at 4. Plaintiff states that she "always" thinks that Lieutenant Arthur will "be there to give [her] a tongue lashing." She asserts that she is so "afraid" of Lieutenant Arthur that she refuses to look Arthur "directly in her eyes," and that the "slightest movement of [Arthur's] hands causes [plaintiff] to jump." Plaintiff further notes that she cannot "control [her] tears" or her trembling hands, and that Lieutenant Arthur "laughs at the way she makes [plaintiff] feel."

Attached to the complaint are five grievances filled out by plaintiff. Doc. [1-1]. The Court has reviewed these exhibits and will treat them as part of the pleadings.[1] In the grievances, plaintiff repeats her allegations regarding Lieutenant Arthur, while also adding some that are not present in the "Statement of Claim."

At the outset, plaintiff contends that on numerous occasions, Lieutenant Arthur has "harassed, belittled, [and] tormented" her. Doc. [1-1] at 1. She accuses Lieutenant Arthur of being "a real dirty cop," and of using "her authority to abuse inmates and molest them in a[n] emotional way." According to plaintiff, Lieutenant Arthur "has a way of manipulating the hand of others to do as she pleases," and that "[s]he becomes the master and us her puppets." Doc. [1-1] at 1-2.

---

[1] *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). *See also Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (stating that "while ordinarily, only the facts alleged in the complaint are considered in determining whether it states a claim, materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint"); and *Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

Plaintiff believes that Lieutenant Arthur's "ways are unruly [and] malicious," and have the potential to inflict long term mental and emotional damage. Doc. [1-1] at 2.

By way of further explanation, plaintiff notes that she "was first introduced" to Lieutenant Arthur in April 2021, and that Arthur initially charmed her and other inmates "with her smile." Doc. [1-1] at 3. She states that Lieutenant Arthur told the inmates that they would be treated fairly, have equal assembly rights, and receive "the tools to become better." As weeks passed, however, this proved to be a "false hope," and it became clear to plaintiff that Lieutenant Arthur "was not the best [candidate] for this job." In particular, Lieutenant Arthur purportedly insulted "her own staff and humiliate[d] the inmates." According to plaintiff, everything done by the inmates was "wrong in [Lieutenant Arthur's] eyes."

Plaintiff states that she eventually "crossed paths" with Lieutenant Arthur when she "asked for class on a topic of [her] own curiosity that went against [Arthur's] judgement." Doc. [1-1] at 4. From that day on, plaintiff states that Lieutenant Arthur "had her eyes set to destroy [plaintiff] and make [her] bow in fear."

At one point, plaintiff asserts that she "was the closet worker," and that Officer Hanning encouraged her "to have tunnel vision to success." When Lieutenant Arthur found out that Officer Hanning and plaintiff were becoming too close, Arthur tried to remove plaintiff. Plaintiff alleges that Lieutenant Arthur even coerced an inmate to pretend "she was afraid of" plaintiff in order to place plaintiff in "solitary confinement." She further asserts that she was in administrative segregation from June 21 until October 6, 2021, when she was returned to general population. Doc. [1-1] at 5. Upon her return, plaintiff claims that Lieutenant Arthur "greeted [her] with a [vicious] smile that never met her eyes." Plaintiff states that she "was doing great [and] back to not being on the radar," but that with Lieutenant Arthur "as the enforcer it didn't last long." She asserts that

Lieutenant Arthur's actions "tarnished [her] name," slandered her, and "made things uneasy for" her.

On May 5, 2022, Lieutenant Arthur allegedly "lied" in order to place plaintiff back into administrative segregation. Doc. [1-1] at 6. Specifically, plaintiff states that she hugged a fellow "inmate in celebration of [the] inmate receiving less time on her case," and that Lieutenant Arthur said this "was a PREA" violation. Plaintiff "was cuffed up and place back on the 8th floor," but was "found not guilty and released" on May 14.

From May 14 to September 11, 2022, Lieutenant Arthur would call plaintiff over the intercom in order to have plaintiff come talk to her. Doc. [1] at 7. This occurred "every week on multiple" occasions. Plaintiff admits that Lieutenant Arthur was not "mean all the times," but that she would "then become abrasive and mean to [her] the next" time. She states that this traumatized her, and that she got "a serious case of PTSD from [Lieutenant Arthur's] tongue-lashing threats and intimidation schemes."

On September 11, 2022, plaintiff acknowledges that a "group of females [were] horseplaying." Doc. [1-1] at 7-8. The next day, she "was brought to the [Eighth] Floor once more under the hand of [Lieutenant] Arthur under a false pretense of PREA." Doc. [1-1] at 8. As before, she had a hearing, but this time she was given five days in administrative segregation before being allowed to return to general population. Nevertheless, plaintiff states that Lieutenant Arthur again placed her into administrative segregation "for the remainder of [her] stay," though she provides no further context or support for this statement.

Based on the above, plaintiff states that she suffers from PTSD, takes "over 5 different medications," and is "traumatized." Doc. [1] at 4. She seeks $250,000 in damages. Doc. [1] at 5.

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, accusing Lieutenant Arthur of verbal harassment and of wrongfully placing her into administrative segregation. Because she is proceeding in forma pauperis, the Court has reviewed her complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

### A.  Official Capacity Claim

Plaintiff has sued Lieutenant Arthur in an official capacity. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, Lieutenant Arthur is alleged to be employed by the St. Louis County Justice Center. As such, the official capacity claim against her is treated as being made against the county itself.

A local governing body such as St. Louis County can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To prevail

on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of St. Louis County.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). Here, plaintiff has not presented sufficient factual allegations to support the proposition that St. Louis County has an unconstitutional policy or custom, or that it has been deliberately indifferent in training or supervising its employees.

First, with regard to policy, plaintiff points to no "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [St. Louis County's] governing body" as being at issue in this case. Certainly, she does not allege that Lieutenant Arthur's actions were the result of "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Rather, the facts – such as they are – indicate that Lieutenant Arthur acted according to her own initiative, not an official county policy.

Second, as to custom, plaintiff has not demonstrated the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by [St. Louis County] employees," much less that county policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. In particular, plaintiff's allegations do not encompass the widespread activities of county employees, but instead focuses on the actions of a single person. Furthermore, while she claims that Lieutenant Arthur verbally harassed her from April 2021 to September 2022, verbal harassment is not a constitutional violation. *See O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (affirming district court determination that "alleged verbal threats and abuse by city jail officials…did not rise to the level of a constitutional violation"). Because plaintiff has not asserted a widespread pattern of unconstitutional misconduct, she has not established that St. Louis County has an unconstitutional custom.

Third, plaintiff has not properly alleged that St. Louis County was deliberately indifferent in failing to train or supervise its employees, as she has not shown that the county "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Typically, this notice comes from allegations of a "pattern of similar constitutional violations by untrained employees." As noted above, however, plaintiff has not presented any facts supporting the requisite pattern.

10

Finally, to the extent that plaintiff might seek to hold St. Louis County liable for the actions of its employee, the Court notes that a municipality cannot be held liable merely because it employs a tortfeasor. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under [42 U.S.C.] § 1983, a municipality…cannot be liable on a respondeat superior theory"). *See also Andrews v. Fowler*, 93 F.3d 1069, 1074 (8th Cir. 1996) ("A local government may not be sued under [42 U.S.C.] § 1983 for an injury inflicted solely by its employees or agents on a theory of respondeat superior").

For all these reasons, plaintiff has failed to state a claim against St. Louis County. Therefore, the official capacity claim against Lieutenant Arthur must be dismissed.

**B. Individual Capacity Claim**

Plaintiff has also sued Lieutenant Arthur in an individual capacity, accusing her of verbal harassment, and of wrongly placing her in administrative segregation. Individual liability in a 42 U.S.C. § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

11

i.      **Verbal Harassment Claim**

In general, verbal threats or name calling is not actionable under 42 U.S.C. § 1983. *See Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992) ("Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim"); and *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983"). Put in other words, fear or emotional injury resulting "solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest." *King v. Olmsted Cty.*, 117 F.3d 1065, 1067 (8th Cir. 1997). More specifically, "a threat constitutes an actionable constitutional violation only when the threat is so brutal or wantonly cruel as to shock the conscience…or if the threat exerts coercive pressure on the plaintiff and the plaintiff suffers the deprivation of a constitutional right." *Id*.

Here, plaintiff accuses Lieutenant Arthur of verbal harassment and verbal abuse in both the "Statement of Claim" and the attached grievances. However, as noted above, threats, name-calling, and even racially derogatory remarks are typically not cognizable under 42 U.S.C. § 1983, as they do not rise to the level of a constitutional violation. *See Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) ("Verbal abuse by correctional officials, even the use of reprehensible racially derogatory language, is not by itself unconstitutional race discrimination unless it is pervasive or severe enough to amount to racial harassment"); *Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002) (stating that "the use of racially derogatory language, unless it is pervasive or severe enough to amount to racial harassment, will not by itself violate the fourteenth amendment"); *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758-59 (8th Cir. 2001) (stating that "any alleged verbal harassment, in the form of threats and unflattering remarks directed at plaintiffs, does not rise to the level required to establish a constitutional violation"); *Howard v. Everett*, 208 F.3d 218, 2000 WL

268493, at *1 (8th Cir. 2000) (unpublished opinion) ("We believe this sexual harassment, absent contact or touching, does not constitute unnecessary and wanton infliction of pain"); and *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) ("Name calling is not a constitutional violation").

There is an exception if a verbal threat shocks the conscience or puts coercive pressure on a plaintiff. *See King*, 117 F.3d at 1067. Those elements are not alleged here. Plaintiff makes no effort whatsoever to describe the nature of the verbal harassment she endured. Instead, she relies on extremely broad descriptions that give no indication of the content of Lieutenant Arthur's purported remarks. The Court is not required to accept such conclusory pleadings as true, or to speculate about what Lieutenant Arthur might have said. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level").

As noted above, to state a claim against Lieutenant Arthur in her individual capacity, plaintiff must show that she was directly responsible for the deprivation of a constitutional right. The verbal misbehavior in which Lieutenant Arthur allegedly engaged, however, is not cognizable under 42 U.S.C. § 1983, as it does not rise to the level of a constitutional violation. Therefore, plaintiff's verbal harassment claim against Lieutenant Arthur in her individual capacity will be dismissed for failure to state a claim.

### ii.    Conditions of Confinement Claim

Plaintiff's "Statement of Claim" consists solely of allegations regarding Lieutenant Arthur's purported verbal harassment. In the attached grievances, though, plaintiff appears to complain about the conditions of confinement, specifically her placement into administrative segregation by Lieutenant Arthur. To the extent that plaintiff intended to bring a claim against

13

Lieutenant Arthur for placing her into administrative segregation, the Court has determined that plaintiff has not shown that Arthur violated her constitutional rights.

As previously noted, plaintiff is a pretrial detainee. The Supreme Court has determined that the government may detain individuals before trial and "subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979). To that end, there are two ways to determine whether conditions rise to the level of punishment. *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 907 (8th Cir. 2020). First, a plaintiff can show that his or her conditions of confinement were intentionally punitive. *Id*. Second, in lieu of an "expressly demonstrated intent to punish," a plaintiff can "also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id*. If conditions are arbitrary or excessive, it can be inferred that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon pretrial detainees. *Id*. "However, not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

In this case, plaintiff has not demonstrated that Lieutenant Arthur placed her into administrative segregation for punitive purposes, rather than to maintain discipline and safety. As plaintiff herself acknowledges, she was involved in activity that could be construed as rule-breaking, including physical contact with another inmate, and horseplay. When she received violations from Lieutenant Arthur, plaintiff admits that she had a hearing before a case manager, and there is no indication that Arthur had any role in these hearings. In other words, Lieutenant Arthur alone did not put her into administrative segregation; rather, other individuals at the St.

14

Louis Justice Center were also involved in such decisions. This cuts against plaintiff's unbacked assertions that Lieutenant Arthur had no legitimate reasons for her actions.

Plaintiff strongly argues that Lieutenant Arthur acted vindictively and punitively, labels Arthur "a terrorist and punisher," and concludes that Arthur "lied" or acted under false pretenses in placing her into administrative segregation. Labels and conclusions alone are not enough. Instead, plaintiff needs to provide actual facts to support this argument, which she has not done. The Court is not required to accept such bare conclusions as true, especially as some of her allegations militate against them. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations").

Furthermore, the Court cannot infer that Lieutenant Arthur acted punitively based on the overall context of alleged verbal harassment, because plaintiff's claims of verbal harassment are themselves unsupported conclusions. As discussed at length above, plaintiff does not present a single example of anything that Lieutenant Arthur said to her which may have supported plaintiff's belief that Arthur acted in an unconstitutionally punitive manner.

To state an individual capacity claim, plaintiff must present facts connecting the actions of Lieutenant Arthur to a constitutional violation. While plaintiff insinuates that she was wrongfully placed in administrative segregation, there is no factual enhancement demonstrating that Lieutenant Arthur acted punitively in so doing. That is, nothing – save for plaintiff's conclusory statements – shows that Lieutenant Arthur acted in ways other than to maintain or restore discipline or enforce facility rules. For these reasons, plaintiff's conditions of confinement claim against Lieutenant Arthur must be dismissed for failure to state a claim.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis, Doc. [4], is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $20.51 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make her remittance payable to "Clerk, United States District Court," and to include upon it: (1) her name; (2) her inmate registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this order of dismissal would not be taken in good faith.

Dated this 27th Day of December, 2022.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

16